**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

JESSICA LYNN TRAN,

                Petitioner,

vs.

UNITED STATES OF AMERICA,

                Respondent.

No. C 13-4030-MWB
(No. CR 12-4009-2-MWB)

**MEMORANDUM OPINION AND ORDER REGARDING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT A SENTENCE**

---

**TABLE OF CONTENTS**

I.    **INTRODUCTION**...................................................................2
    A.   *Factual Background* ..................................................... 2
    B.   *Criminal Proceedings* .................................................. 3
    C.   *Section 2255 Proceedings* ........................................... 11

II.   **LEGAL ANALYSIS** ..................................................... 12
    A.   *Standards For § 2255 Relief*....................................... 13
        1.   *Grounds for relief* ........................................... 13
        2.   *Standards for an evidentiary hearing*................. 15
    B.   *Tran's "Ineffective Assistance Of Counsel" Claims*...................... 16
        1.   *Applicable standards*........................................ 16
        2.   *Failure to advise Tran to take a plea to avoid the mandatory minimum sentence on the firearm charge*............. 18
            a.   *Arguments of the parties* ....................... 18
            b.   *Analysis* ............................................. 20
        3.   *Failure to advise Tran to go to trial on the firearm charge* ................................................ 22
            a.   *Arguments of the parties* ....................... 23
            b.   *Analysis* ............................................. 24
    C.   *Certificate Of Appealability*....................................... 27

III.  **CONCLUSION** ........................................................ 28

This case is before me on petitioner Jessica Lynn Tran's April 5, 2013, *pro se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Original § 2255 Motion) (Civ. docket no. 1), as amended, with the assistance of counsel, on November 19, 2013. *See* Amended Motion For Relief Under 28 U.S.C. § 2255 (Amended § 2255 Motion) (Civ. docket no. 32). Tran seeks relief on the basis of ineffective assistance of her federal trial counsel prior to her guilty plea to a firearm offense carrying a five-year mandatory minimum sentence. The respondent denies that Tran is entitled to any relief on her claim.

## I.     INTRODUCTION
### A.     Factual Background

In a Report And Recommendation On Motion To Suppress (Crim. docket no. 48) in the underlying criminal case, to which no objections were filed, former Chief United States Magistrate Judge Paul A. Zoss explained the circumstances leading to Tran's arrest, as follows:

> At about four o'clock on the afternoon of December 20, 2011, Sioux City Police Officers Noltze and Tyler began surveilling [Tran's] residence. The police had a warrant for the arrest of [Tran's] boyfriend, Gene Boykin, and they believed he could be found at [Tran's] residence. As they watched the house, they observed Boykin leave the residence to walk his dog and then re-enter the residence. They also observed four different vehicles arrive at the residence, with people from the vehicles entering the residence and then leaving after less than 20 minutes.
>
> At about 7 o'clock, the police observed a pizza delivery man approach the residence to deliver a pizza. Boykin paid

for the pizza at the door, and the delivery man left. A short time later, Officers Noltze and Tyler approached the residence. As they did so, they detected a strong odor of marijuana. They knocked on the door, and Boykin asked who it was. Officer Noltze responded that he was the pizza delivery man. Boykin opened the door, and the officers grabbed him and pulled him onto the porch, where they arrested and handcuffed him. Through the open door, officers observed [Tran] standing near several bags of marijuana and what appeared to be the grip of a pistol. The police told [Tran] "to stay put and not move," and then entered the residence to secure her. The police asked Boykin if there were any other weapons in the house, and he told them there was a gun in the bedroom. With the assistance of Woodbury County deputy sheriffs who had arrived at the scene, Officer Tyler then performed a protective sweep of the entire residence, but did not seize any evidence.

Officer Noltze applied for and obtained a search warrant of [Tran's] residence. During the search, officers seized several bags and containers of marijuana, three marijuana plants, ammunition, and weapons.

Report And Recommendation (Crim. docket no. 48), 1-2. There does not appear to be any dispute that Tran was initially arrested and held on state charges, or that counsel from the state public defender's office was appointed to represent her on those charges.


### B.    Criminal Proceedings

Only Tran's boyfriend, Gene Boykin, Jr., was initially charged with federal offenses in federal court. Specifically, on January 19, 2012, a Grand Jury handed down an Indictment (Crim. docket no. 1), charging Boykin, in Count 1, with possessing with intent to deliver marijuana within 1,000 feet of a school, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), and 860, and, in Count 2, with possessing a firearm in

furtherance of a drug-trafficking crime, that is, the crime charged in Count 1, in violation of 18 U.S.C. § 924(c)(1(A).

Subsequently, on January 30, 2012, in a "magistrate case," No. 12-mj-12, a DEA task force officer swore out a Criminal Complaint (M.J. case docket no. 2) against Tran alleging that she had committed the same offenses charged against Boykin. The federal prosecutor explained the circumstances leading to the filing of that Criminal Complaint in federal court to me at Tran's eventual sentencing hearing, as follows:

> [THE PROSECUTOR]: . . . I just want to put it on the record . . . that this defendant had an opportunity to remain in state court. She was arrested along with her boyfriend who was clearly much more involved in this and clearly—clearly more culpable.
>
>            \* \* \*
>
>   . . . And we understood this defendant's role in the entire thing and went to her before we complained her early on and said, "We think we have a pretty good case against [your boyfriend], but if you want to cooperate, you can stay in state court." I've been in contact and was in contact at the time with the state prosecutors. They indicated that they extended a deal to her and her attorney indicating that they would allow them to even request a deferred judgment, not a deferred prosecution.
>
>   Now, they couldn't prob—maybe couldn't get that because a gun was involved, but given her criminal history and her involvement here, probation would have been a very likely outcome, and I talked even this morning with the state prosecutors.
>
>   And for some reason the defense attorney thought that there was a successful suppression issue regarding this issue. We informed her and her attorney that if she proceeded with the suppression issue it would be taken federal, her case would be, and this was not a joke, it's not a threat. It's just—

> it's not the kind of thing that would normally go federal even
> for the boyfriend for the kind of marijuana that was involved.
> It was a couple of pounds. But when weapons are involved
> and things like that, it gets our attention.
>
> And the decision was made by the defense team at the
> state level to proceed with the suppression motion, and we
> carried through on our promise to bring it to the federal level.

Sentencing Hearing Transcript (Crim. docket no. 109), 4:10-14, 5:5—6:9. The Clerk of Court appointed Tran's federal trial counsel from the CJA panel on January 31, 2012. There is no indication in the record, at least none that has been brought to my attention or that I have discovered, to indicate that Tran's federal trial counsel had any involvement in her representation prior to that date.

The record shows that, even after the federal Criminal Complaint was filed against her, Tran's federal trial counsel and the prosecutor attempted to negotiate a way for Tran to get out of the federal firearm charge. In particular, on February 14, 2012, Tran's federal trial counsel and the prosecutor exchanged several e-mails, which included discussions of Tran's cooperation and debriefing, in which Tran's federal trial counsel stated, "Ms. Tran is reluctant for reasons of gratitude to **testify** against Gene Boykin." Respondent's Response Brief (Civ. docket no. 35), Exhibit 1 (Civ. docket no. 35-1 (emphasis in the original) (hard copy of federal trial counsel's e-mail of February 14, 2012, at 9:06 p.m.); *see also id.,* Trial Counsel's Affidavit (Civ. docket no. 35-2), 2 (describing and quoting additional portions of the e-mail exchange).

Eventually, in a Superseding Indictment (Crim. docket no. 7), handed down on February 22, 2012, Tran was added as a second defendant on both counts in the federal case previously brought only against Boykin. On March 1, 2012, Tran filed a Written Waiver Of Personal Appearance At Arraignment (Crim. docket no. 11), in which she entered a plea of not guilty to both federal charges against her and stipulated to the entry

of the standard discovery order used in this district. Tran's jury trial on the federal charges against her was originally set for May 7, 2012, *see* Order (Crim. docket no. 13), but was later continued to June 4, 2012, *see* Order (Crim. docket no. 21). Boykin was arraigned on the Superseding Indictment several weeks after Tran, *see* Minutes Of Defendant Boykin's April 20, 2012, Arraignment (Crim. docket no. 24), but his trial was also eventually set for June 4, 2012, *see* Order (Crim. docket no. 26).

The prosecution continued its attempts to obtain Tran's cooperation in federal court, in return for dropping the federal firearm charge against her. As the federal prosecutor explained at Tran's sentencing,

> [THE PROSECUTOR]: Once it even came to the federal level, the defense team, through [federal trial counsel], was given the opportunity to not have the 924(c) charge, that we would just have the gun charge, sort of the two-point enhancement in the sentencing enhancement—
>
> THE COURT: Right.
>
> [THE PROSECUTOR]: —which I think would be a legitimate—I still thought it was a legitimate offer at the time. [Federal trial counsel] thought that having—he sent me a copy of the brief that had been drafted by the—or the argument that had been drafted by the state attorney, public defender, regarding the suppression issue. I didn't see anything wrong with it.
>
> The offer was made. The offer was declined again to get rid of—even once you're at the federal level to get rid of the 924(c) [charge], and we proceeded to the suppression hearing.

Sentencing Hearing Transcript at 6:6-19.

Tran's federal trial counsel did not file Tran's Motion To Suppress (Crim. docket no. 29) in the federal proceedings until April 26, 2012, more than two months after she was indicted in federal court. Tran's federal trial counsel then filed an Amended Motion

To Suppress (Crim. docket no. 38), on May 3, 2012. In the Amended Motion To Suppress, Tran's federal trial counsel argued that a warrantless search of Tran's home after Boykin's arrest was not justified, on various grounds, and that the search warrant eventually issued after the warrantless search did not justify the later search. Judge Zoss recommended that I deny Tran's Amended Motion To Suppress in a Report And Recommendation (Crim. docket no. 48), filed May 15, 2012. No objections to that Report And Recommendation were filed, and I accepted Judge Zoss's recommendation by Order (Crim. docket no. 61), filed July 18, 2012. In the interim, by Order (Crim. docket no. 53), filed June 20, 2012, the trial of the charges against both Boykin and Tran was continued to a date certain of August 29, 2012.

Neither Boykin nor Tran went to trial, however. By Order (Crim. docket no. 62), filed July 24, 2012, United States Magistrate Judge Leonard T. Strand set a guilty plea hearing for Tran for August 15, 2012, and struck the trial scheduled for August 29, 2012, as to her. On August 1, 2012, after Tran's guilty plea hearing was set, Boykin's trial was reset to begin on August 27, 2012. *See* Order (Crim. docket no. 64). On August 3, 2012, more than a week after Tran's guilty plea hearing was set, Judge Strand filed an Order (Crim. docket no. 65) setting a guilty plea hearing for Boykin for August 16, 2012, and also struck the trial scheduled for him.

At her plea hearing on August 15, 2012, before Judge Strand, Tran pleaded guilty to both federal charges against her pursuant to a "cooperation" plea agreement, which included an "appeal waiver."[1] In a Report And Recommendation (Crim. docket no. 72),

---

[1] Tran contends that Judge Strand's description of the "possession" element of the federal firearm charge at Tran's plea hearing is of interest in these proceedings. The pertinent part of the plea hearing transcript is the following:

filed August 15, 2012, Judge Strand recommended that I accept Tran's guilty plea to both charges. I did so in an Order (Crim. docket no. 75), filed August 15, 2012. The next

> THE COURT: Okay. The next thing on Count 2 that the government would have to prove is that on or about December 20 of 2011 in the Northern District of Iowa you possessed the firearm that's identified in the superseding indictment which is a Ruger LCP 38-caliber pistol, serial number 276-06016.
>
> And under the law possession can mean several different kinds of things, ma'am. Actual possession means that you knowingly had direct physical control over the item. Construction--or I'm sorry, constructive possession means that even if you didn't have direct physical control you knew that the item was present, you had control over the place where the item was located, or you had control or ownership of the item itself. And this kind of constructive possession can be established, for example, by showing that the item was seized at your residence if you knew of the presence of the item at your residence.
>
> If one person alone had actual or constructive possession of the item, then possession is sole. If two or more persons shared actual or constructive possession of an item, possession was joint.
>
> You are considered to have been in possession of the firearm that I just described if it was in your actual possession, constructive possession, sole possession, and/or joint possession.
>
> Ma'am, on or about December 20 of 2011 in the Northern District of Iowa, did you possess the firearm that we've previously discussed?
>
> THE DEFENDANT: Yes.

Plea Hearing Transcript (Crim. docket no. 111), 10:21—11:23.

day, August 16, 2012, Boykin also pleaded guilty to both charges against him before Judge Strand, *see* Plea Hearing Minutes (Crim. docket no. 77), Judge Strand recommended that I accept his guilty plea in a Report And Recommendation (Crim. docket no. 78), and I did so. *See* Order (Crim. docket no. 81).

I held separate sentencing hearings for Tran and Boykin on November 29, 2012. *See* Sentencing Hearing Minutes (Crim. docket nos. 99 and 100). Near the beginning of Tran's sentencing hearing, I observed that the minimum sentence that I could impose was 72 months, consisting of the mandatory minimum of 12 months on Count 1 and the mandatory minimum of 60 months on Count 2, which had to be consecutive to the sentence on Count 1, and the parties agreed. I then made the following comments:

> Now, when I was looking at this file, I couldn't really understand why the defendant was pleading guilty to two mandatory minimums, one of which has a consecutive component to it. But then I—yeah, I was thinking she would have been better off going to trial at least on the gun charge. But then I looked at the plea agreement, and I saw it was a cooperation plea agreement.
>
> So reading between the lines, I assume that, [federal trial counsel], you had her sign the cooperation plea agreement thinking that she was going to cooperate and then the government would file a 3553(e) motion and that would waive a mandatory minimum, one or both mandatory minimums.

Sentencing Hearing Transcript at 2:23—3:9. Tran's federal trial counsel agreed to that comment. *Id*. at 3:10. He also represented, without objection from the prosecutor, that Tran had cooperated to the extent that she had "debriefed," but that she had not been called as a witness in any proceedings and that the prosecution had not filed any substantial assistance motion. *Id*. at 3:18-21. The prosecutor then made the comments

quoted extensively above. After this explanation of what I called "the backstory," I commented,

> I feel that, you know, she was treated very fairly by the U.S. Attorney's Office and had a number of options, all of which would have resulted in a substantially less sentence, including a chance of probably getting probation in state court and walking out of the courtroom at the time of sentencing rather than looking at 72 months in a United States pen—prison. So I do appreciate you filling me in on the backstory.

Sentencing Hearing Transcript at 9:6-13.

I also gave Tran's federal trial counsel the opportunity to add anything that he wanted. He commented, as follows:

> [FEDERAL TRIAL COUNSEL]: The only thing I would say—and I can't talk very much about this because of confidentiality—is that the starting and finishing line for me in making these kind of decisions is that it is the defendant's decision.
>
> THE COURT: Right.
>
> [FEDERAL TRIAL COUNSEL]: It has been my responsibility to carry through on that decision whether I agree with it, whether I disagree with it, whether I think that the timing is unfortunate. It's—there isn't anything else that I can say about this, Your Honor.

Sentencing Hearing Transcript at 9:15-24. Tran declined to give an allocution.

I then stated that, although I would have been "in a position to be able to give [Tran] a much, much, much, much lower sentence which is a sentence that I think is appropriate in this case," if Tran "had made some different decisions," I was required to impose the "doubly mandatory minimum sentence" mandated by Congress. *Id*. at 11:4-10. Consequently, I imposed a term of imprisonment for a total of 72 months, consisting

of 12 months on Count 1 and 60 months on Count 2, with the 60 months on Count 2 to run consecutive to the 12 months on Count 1. *See* Judgment (Crim. docket no. 102).

Because of the "appeal waiver" in her plea agreement, Tran did not appeal her conviction or sentence.

### C.     *Section 2255 Proceedings*

On April 5, 2013, Tran filed a *pro se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Original § 2255 Motion) (Civ. docket no. 1). In her Original § 2255 Motion, Tran asserted that her federal trial counsel provided ineffective assistance in the following ways: (1) failing to file a Notice Of Appeal after sentencing, when she attempted to talk to him about her options for appeal; (2) failing to explain to her what her sentencing options were, because she received two mandatory minimum sentences; (3) failing to determine that the firearm belonged to her or her co-defendant, that is, failing to challenge the possession of the firearm, as opposed to constructive possession; and (4) failing to discuss with her what her options were for a jury trial.

By Order (Civ. docket no. 2), filed April 5, 2013, I directed the respondent to file an answer, and the respondent did so on April 10, 2013. *See* Answer (Civ. docket no. 3). By Order (Civ. docket no. 4), filed April 11, 2013, I directed that counsel be appointed to represent Tran in this matter and set a briefing schedule. Continuances of the briefing schedule were permitted, and Tran's § 2255 counsel was granted access to confidential portions of the trial record.

On September 19, 2013, the date eventually set for Tran's brief on the merits of her Original § 2255 Motion, Tran's § 2255 counsel filed Movant's Request For Evidentiary Hearing (Civ. docket no. 24), with a supporting brief. By Order (Civ. docket no. 25), filed September 24, 2013, I construed Tran's brief in support of Tran's Request

For Evidentiary Hearing as her brief on the merits, because it addressed the merits of her claims and was filed at the deadline that I had set for her brief on the merits. I then reiterated the existing deadlines for the respondent's brief and any reply by Tran. By Orders (Civ. docket nos. 27 and 31), I granted the respondent's motions for extensions of the briefing deadlines and, by Order (Civ. docket no. 30), I granted Tran's unresisted motion to amend her § 2255 Motion. On November 19, 2013, Tran filed her Amended Motion For Relief Under 28 U.S.C. § 2255 (Amended § 2255 Motion) (Civ. docket no. 32), amended with the aid of counsel. As Tran had indicated in the Brief (Civ. docket no. 24-1) that I construed as her brief on the merits, Tran consolidated and clarified her claims for § 2255 relief in her Amended § 2255 Motion to be the following: (1) federal trial counsel failed to advise her that she should accept a plea without the mandatory minimum firearm count based on his erroneous belief that he could exclude evidence via the Fourth Amendment; and (2) federal trial counsel failed to advise her to go to trial on Count 2. The respondent filed its Response And Memorandum In Support (Civ. docket no. 35) on January 21, 2014, to which were attached the hard

copy of one e-mail from Tran's federal trial counsel to the prosecutor and an affidavit from Tran's federal trial counsel. Tran filed her Reply (Civ. docket no. 38) on February 28, 2014.

Regrettably, there the matter has languished until now, owing to the press of other work and clerical oversight.

## II. LEGAL ANALYSIS

Tran now asserts two claims of ineffective assistance of her federal trial counsel in her Amended § 2255 Motion. I will consider each of those claims separately. However, I will first summarize the standards generally applicable to a claim for § 2255 relief.

### A.  Standards For § 2255 Relief

#### 1.  Grounds for relief

"Section 2255 [of Title 28 of the United States Code] 'was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)).  Nevertheless, "[l]ike habeas corpus, this remedy 'does not encompass all claimed errors in conviction and sentencing.'" *Id.* (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979).  Specifically, § 2255 provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  Thus, § 2255 "provides a remedy for jurisdictional and constitutional errors," but "[b]eyond that, the permissible scope of a § 2255 collateral attack on a final conviction or sentence is severely limited; 'an error of law does not provide a basis for collateral attack unless the claimed error constituted "a fundamental defect which inherently results in a complete miscarriage of justice."'" *Sun Bear*, 688 F.3d at 704 (quoting *Addonizio*, 442 U.S. at 185, in turn quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)); *accord Walking Eagle v. United States*, 742 F.3d 1079, 1081-82 (8th Cir. 2014) ("'Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on

direct appeal and, if uncorrected, would result in a complete miscarriage of justice.'" (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)).

In addition, where an issue *was* raised, considered, and rejected on the merits on direct appeal, "it may not be raised in a motion for post-conviction relief under 28 U.S.C. § 2255 or § 2241." *United States v. Rhodes*, 730 F.3d 727, 731 (8th Cir. 2013). There was no appeal in Tran's case, so this principle raises no impediment to her present claims. Also, where a claim *was not* raised on direct appeal, it generally may not be raised in a § 2255 motion. *Walking Eagle*, 742 F.3d at 1082. A petitioner may overcome "procedural default" from failure to raise a claim on direct appeal, however, if the petitioner establishes both "'cause for the procedural default and actual prejudice resulting from the error.'" *Id.* (quoting *Apfel*, 97 F.3d at 1076, in turn citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982)). "'Absent unusual circumstances, a showing of ineffective assistance of counsel satisfies both cause and prejudice.'" *Id.* (quoting *Apfel*, 97 F.3d at 1076)). Indeed, "ineffective assistance of counsel" claims are not procedurally defaulted when brought for the first time pursuant to § 2255. *Massaro v. United States*, 538 U.S. 500, 508 (2003). The Eighth Circuit Court of Appeals has also expressly recognized that a claim of "ineffective assistance of counsel" should be raised in a § 2255 proceeding, rather than on direct appeal. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). Thus, Tran's claims of ineffective assistance of her federal trial counsel are properly and timely presented in § 2255 proceedings.

Not only does ineffective assistance of counsel establish "cause and prejudice" to overcome procedural default, in my experience, such claims are far and away the most common claims for § 2255 relief. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have

the Assistance of Counsel for his defence." U.S. CONST. amend. VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel not only at trial, but at sentencing, on direct appeal, and during other "critical" phases of the criminal proceedings. *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010) (negotiation of a plea bargain); *Burger v. Kemp*, 483 U.S. 776, 803–04 (1987) (pretrial plea negotiations); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985) (direct appeal); *Gardner v. Florida*, 430 U.S. 349, 358 (1977) (sentencing). The Eighth Circuit Court of Appeals has recognized that, if a defendant was denied the effective assistance of counsel guaranteed by the Sixth Amendment, "then his sentence was imposed 'in violation of the Constitution,' . . . and he is entitled to relief" pursuant to § 2255(a). *King v. United States*, 595 F.3d 844, 852 (8th Cir. 2010). I will consider the standards applicable to an ineffective assistance of counsel claim in more detail when I turn to consideration of Tran's two ineffective assistance of counsel claims.

### 2. *Standards for an evidentiary hearing*

One further procedural matter that is often of considerable importance in § 2255 proceedings—and one that is plainly of central concern here, where Tran's § 2255 counsel framed her opening brief as a request for an evidentiary hearing—is the standard for an evidentiary hearing. As the Eighth Circuit Court of Appeals recently explained,

> "Evidentiary hearings on 28 U.S.C. § 2255 motions are preferred, and the general rule is that a hearing is necessary prior to the motion's disposition if a factual dispute exists." [*Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir. 2013)]. "The district court is not permitted to make a credibility determination on the affidavits alone." *Id*. at 1206.

*United States v. Sellner*, 773 F.3d 927, 929 (8th Cir. 2014). Indeed, "'[w]here petitioner's allegations, if true, amount to ineffective assistance of counsel, a hearing must be held unless the record 'affirmatively refutes the factual assertions upon which

[the claim] is based.'"" *Franco v. United States*, 762 F.3d 761, 763 (8th Cir. 2014)

(citing *Watson v. United States*, 493 F.3d 960, 964 (8th Cir. 2007), in turn quoting *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994)). On the other hand,

> [The district court] may . . . deny an evidentiary hearing if "(1) the [petitioner's] allegations, accepted as true, would not entitle the [petitioner] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." [*Thomas*, 737 F.3d] at 1206–07 (alterations in original) (quoting *Buster v. United States*, 447 F.3d 1130, 1132 (8th Cir.2006)).

*Sellner*, 773 F.3d at 929-930; *accord Anderson v. United States*, 762 F.3d 787, 792 (8th Cir. 2014) (citing 28 U.S.C. § 2255(b)); *Franco*, 762 F.3d at 763; *Winters v. United States*, 716 F.3d 1098, 1103 (8th Cir. 2013).

The district court's denial of an evidentiary hearing is reviewed for abuse of discretion. *Sellner*, 773 F.3d at 929; *see also United States v. Fausto*, 754 F.3d 640, 642 (8th Cir. 2014) (explaining that, to determine whether the district court abused its discretion in denying an evidentiary hearing, the court must review de novo the validity of a petitioner's § 2255 claims).

### B.     Tran's "Ineffective Assistance Of Counsel" Claims

As explained above, Tran asserts two claims of ineffective assistance of her federal trial counsel in her Amended § 2255 Motion. Before considering these claims separately, I will summarize the requirements for proof of an ineffective assistance of counsel claim.

### 1.     Applicable standards

As the Eighth Circuit Court of Appeals has explained,

> "Normally, in order to succeed on a claim of ineffective assistance of counsel, the defendant must show that counsel's

16

> performance was 'deficient' and that the 'deficient
> performance prejudiced the defense.'" *Walking Eagle v.
> United States*, 742 F.3d 1079, 1082 (8th Cir.2014) (quoting
> *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct.
> 2052, 80 L.Ed.2d 674 (1984)).

*Sweeney v. United States*, 766 F.3d 857, 859-60 (8th Cir. 2014). These two prongs require some further explication.

"Deficient" performance is performance that falls "'below an objective standard of reasonableness,'" *Lafler v. Cooper*, ___ U.S. ___, ___, 132 U.S. 1376, 1384 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)), that is, conduct that failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Donnell v. United States*, 765 F.3d 817, 821 (8th Cir. 2014). Thus, "[t]he challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, ___, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 687)).

"To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, ___ U.S. at ___, 132 S. Ct. at 1384 (quoting *Strickland*, 466 U.S. at 694). The Court has explained more specifically what a "reasonable probability" means:

> "A reasonable probability is a probability sufficient to
> undermine confidence in the outcome." [*Strickland*, 466 U.S.
> at 694]. That requires a "substantial," not just "conceivable,"
> likelihood of a different result. *Richter*, 562 U.S., at ___, 131
> S. Ct., at 791.

*Cullen v. Pinholster*, ___ U.S. ___, ___, 131 S. Ct. 1388, 1403 (2011). Ultimately, a showing of "prejudice" requires counsel's errors to be "'so serious as to deprive the

defendant of a fair trial, a trial whose result is reliable.'" *Richter*, ___ U.S. at ___, 131 S. Ct. at 787-88 (quoting *Strickland*, 466 U.S. at 687). As the Eighth Circuit Court of Appeals has explained, however,

> [P]rejudice may be presumed when the defendant experiences a "complete denial of counsel" at a critical stage of his trial. *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). "[T]he trial is the paradigmatic critical stage." *United States v. Turner*, 975 F.2d 490, 496 (8th Cir.1992).

*Sweeney*, 766 F.3d at 859-60.

I turn now to consideration of Tran's ineffective assistance of counsel claims under these standards.

### 2. Failure to advise Tran to take a plea to avoid the mandatory minimum sentence on the firearm charge

Tran's first claim of ineffective assistance of counsel is that her federal trial counsel failed to advise her that she should accept a plea agreement without a mandatory minimum sentence on the firearm charge based on his erroneous belief that he could exclude evidence via the Fourth Amendment. The respondent denies that Tran is entitled to any relief on this claim

#### a. Arguments of the parties

Tran clarifies in her opening brief that the only relief that she seeks is the opportunity to withdraw her guilty plea to the firearm charge, because that is the charge on which her federal trial counsel provided ineffective assistance of counsel. She argues that her federal trial counsel must provide some justification for Tran's rejection of an offer to plead guilty and avoid the federal firearm charge, once this case reached federal court. She argues that the prosecutor clearly confirmed that such an offer was made, and that it was an extremely poor choice to pass up the plea offer and, instead, pursue a frivolous motion to suppress. She contends that Judge Zoss's succinct denial of the

motion to suppress demonstrates that the motion was plainly without merit. Tran's § 2255 counsel argues that, perhaps, Tran's federal trial counsel did advise her to take the plea offer, in light of his brief comments during Tran's sentencing, but that the issue cannot be resolved without an evidentiary hearing at which Tran's federal trial counsel will not be inhibited by a duty to maintain client confidentiality.

The respondent argues, and points to federal trial counsel's affidavit as demonstrating, that the opportunity to avoid the mandatory minimum sentence on the firearm charge was never contingent on Tran not filing a motion to suppress, but on Tran's cooperation. Indeed, the respondent points out that federal trial counsel has no recollection of any discussion with the prosecution about abandoning the motion to suppress in order for the prosecution to drop the firearm charge, and points to e-mails identified by federal trial counsel as proving that point. The respondent also points out that federal trial counsel did not believe that the motion to suppress that he ultimately filed in federal court was frivolous, and that his decision to file it is a virtually unchallengeable strategic move that does not demonstrate ineffective assistance of counsel just because it was unsuccessful. The respondent also argues that federal trial counsel never advised Tran to rely solely on the motion to suppress, but actively sought Tran's cooperation with the prosecution to try to avoid the firearm charge. More specifically still, the respondent argues that, as indicated in federal trial counsel's February 14, 2012, e-mail, it was Tran's refusal to cooperate against her boyfriend that precluded her from avoiding the firearm charge.

In reply, Tran clarifies that only the conduct of her federal trial counsel is at issue, but she argues that the prosecutor's comments at Tran's sentencing indicate that federal trial counsel's belief in the merits of the motion to suppress was what caused Tran to reject a plea offer. Tran also argues that an evidentiary hearing is required to address a dispute about whether the prosecution was willing to allow Tran to avoid the federal

firearm charge even if she did not cooperate. She also argues that an evidentiary hearing is required to resolve a dispute about whether her federal trial counsel communicated to her that she was foregoing the opportunity to avoid the federal firearm charge and its mandatory minimum sentence by filing the motion to suppress. She also contends that, where Judge Strand improperly defined constructive possession at her plea hearing, an evidentiary hearing is necessary to determine whether federal trial counsel also provided Tran with such an improper definition in advising her to plead guilty rather than go to trial.

### b. Analysis

I will first consider whether trial counsel's performance fell "'below an objective standard of reasonableness,'" *Lafler*, ___ U.S. at ___, 132 U.S. at 1384 (quoting *Hill*, 474 U.S. at 57), that is, failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney, *Strickland*, 466 U.S. at 687; *Donnell*, 765 F.3d at 821. Tran's allegation that her federal trial counsel's filing of a motion to suppress cutoff Tran's chance to avoid the firearm charge cannot be accepted as true because it is contradicted by the record and is conclusory. *Sellner*, 773 F.3d at 929-930 (explaining that no evidentiary hearing is required in such circumstances).

Tran relies on the prosecutor's comments at Tran's sentencing hearing in support of this allegation, but those comments plainly demonstrate that it was *state* defense counsel's decision to file a motion to suppress that caused Tran to be charged in federal court with federal crimes, including the firearm offense. *See* Sentencing Hearing Transcript at 5:21—6:9 ("We informed her and her attorney that if she proceeded with the suppression issue it would be taken federal, her case would be. . . And the decision was made by the defense team at the state level to proceed with the suppression motion, and we carried through on our promise to bring it to the federal level."). There is nothing in the record to indicate that, after Tran's case became federal, there was ever any offer

to avoid the firearm charge by not filing a motion to suppress. Rather, the record makes plain that the impediment to avoiding the firearm charge—both between the filing of the Criminal Complaint and the filing of the Superseding Indictment and after the filing of the Superseding Indictment—was Tran's reluctance to cooperate. *See* Respondent's Response Brief, Exhibit 1 (Civ. docket no. 35-1 (hard copy of federal trial counsel's e-mail of February 14, 2012, at 9:06 p.m., stating, "Ms. Tran is reluctant for reasons of gratitude to **testify** against Gene Boykin." (emphasis in the original)); *see also id.,* Trial Counsel's Affidavit, 2 (describing and quoting additional portions of the e-mail exchange, to which no objections have been made, demonstrating that the issue of avoiding the firearm charge hinged on Tran's cooperation). Also, contrary to Tran's reading, the prosecutor's comments about rejection of a plea offer and having the suppression hearing, quoted above beginning on page 6, do not demonstrate that it was *the filing* of the motion to suppress that triggered withdrawal of a plea offer to avoid the firearm charge. Rather, they demonstrate that, because the plea offer was rejected, the suppression hearing could not be avoided. *See* Sentencing Hearing Transcript at 6:6-19. Indeed, it was fully two months after Tran was indicted in federal court before her federal trial counsel even filed a motion to suppress, during which time, the record shows, federal trial counsel was trying to obtain a plea deal based on Tran's debriefing. Thus, while the respondent has identified uncontradicted evidence, in the form of e-mails between the prosecutor and federal trial counsel, discussing the possibility of avoiding the firearm charge if Tran cooperated, Tran has produced nothing but conclusory allegations that there was a link between not filing a motion to suppress and the opportunity to avoid the firearm charge, once federal charges were brought.

Furthermore, while Tran contends that the adequacy of her federal trial counsel's assistance turns on whether or not the motion to suppress was meritorious, the merit of the motion to suppress is not determinative, where the impediment to avoiding the firearm

charge was Tran's reluctance to cooperate, not the filing of the motion to suppress. When an ineffective assistance of counsel claim is based on counsel's *failure* to file a motion to suppress, the claimant must prove that the motion would have been meritorious. *See, e.g., United States v. Luke*, 686 F.3d 600, 605 (8th Cir. 2012). On the other hand, where the claim is that trial counsel was ineffective for *filing* a motion to suppress, the filing of the motion is a matter of trial strategy, which must only be objectively reasonable to be upheld, whether or not the motion was successful. *See, e.g., United States v. McDonald*, Nos. C 03–3072–MWB, CR 01–3002–MWB, 2009 WL 1636137, *10 (N.D. Iowa June 11, 2009) (unpubl. op.) (holding that, where trial counsel's trial strategy decision to file a motion to suppress was objectively reasonable, even though it delayed trial, the petitioner's ineffective assistance of counsel claim was without merit); *Shaw v. United States*, 24 F.3d 1040, 1042 (8th Cir. 1994) ("'[T]rial counsel's reasonable trial strategies cannot constitute ineffective assistance, even if they are unsuccessful.'" (quoting *Flieger v. Delo*, 16 F.3d 878, 885-86 (8th Cir. 1994)). Federal trial counsel's motion to suppress was colorable, *accord* Sentencing Hearing Transcript at 6:13-16 (prosecutor's comment that he had reviewed the motion to suppress filed by Tran's *state* trial counsel before federal trial counsel filed a motion to suppress, and the prosecutor "didn't see anything wrong with it"), and, therefore, filing it was reasonable, even though the motion was unsuccessful. The Motion To Suppress also reasonably served a tactical or strategic purpose of clarifying the evidence available to the prosecution concerning Tran's alleged involvement in the charged offenses, including her alleged constructive possession of the firearm.

Tran is not entitled to an evidentiary hearing or § 2255 relief on this claim.

### 3.     *Failure to advise Tran to go to trial on the firearm charge*

The second claim of ineffective assistance of counsel claim in Tran's Amended § 2255 Motion is that federal trial counsel failed to advise her to go to trial on the firearm

charge in Count 2. The respondent argues that Tran is not entitled to any relief on this claim, either.

### a. *Arguments of the parties*

In support of this claim, Tran argues that, whether it was federal trial counsel's fault or her own bad judgment that led to rejection of an offer to avoid the federal firearm charge, once the offer was rejected, federal trial counsel should have advised Tran to go to trial, because she really had nothing to lose. This is so, she contends, because the effect of the mandatory minimum sentences in her case essentially mooted any benefit of guidelines reductions for acceptance of responsibility. She contends that, with regard to the guilty plea, federal trial counsel was also ineffective in failing to correct Judge Strand's misstatement of the standard for constructive possession, which did not properly address an "intent" requirement, or in using the same flawed statement of the standard, if federal trial counsel, in fact, did so, as the basis for advising Tran to take the plea. She contends that whether an improper statement of the standard for constructive possession played a role in her guilty plea requires an evidentiary hearing. She also argues that, by the time she eventually signed a "cooperation" plea agreement, the benefit of such a plea deal had evaporated, because her co-defendant, her boyfriend Gene Boykin, had also decided to plead guilty.

The respondent argues that Tran fails to consider that a "cooperation" plea agreement allowed her a chance to avoid the mandatory minimum sentence on the firearm charge. The prosecution also argues that there was more than sufficient evidence to support a jury finding (and Tran eventually admitted) that Tran possessed the firearm in question. Thus, the respondent argues that this claim is not supported by the record and is without merit.

In reply, Tran reiterates her contention that Judge Strand improperly stated the standard for constructive possession, particularly in a case involving "joint occupancy"

of the residence where the firearm was discovered. She argues that federal trial counsel's affidavit demonstrates that he did not recognize that this was a "joint occupancy" case, so that it is quite clear that she did not receive proper advice.

### b. Analysis

Again, I will first consider whether trial counsel's performance fell "'below an objective standard of reasonableness,'" *Lafler*, ___ U.S. at ___, 132 U.S. at 1384 (quoting *Hill*, 474 U.S. at 57), that is, failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney, *Strickland*, 466 U.S. at 687; *Donnell*, 765 F.3d at 821. Tran's allegation that her federal trial counsel was ineffective for failing to advise her to go to trial rather than to enter into a plea agreement, once he failed to eliminate the firearm charge, cannot be accepted as true because it is contradicted by the record and it is conclusory. *Sellner*, 773 F.3d at 929-930 (explaining that no evidentiary hearing is required in such circumstances).

Contrary to Tran's contentions, whether either Judge Strand or her federal trial counsel improperly stated the standard for constructive possession is not determinative of any issue in this case.[2] This is so, because prior to the plea hearing at which Judge Strand

---

[2] Tran contends that Judge Strand's explanation of constructive possession, during her plea hearing, which is set out, *supra*, in note 1, was improper, because it did not include "intent to control the firearm." I disagree. Judge Strand's explanation was consistent with numerous decisions of the Eighth Circuit Court of Appeals. *See, e.g., United States v. Goodrich*, 739 F.3d 1091, 1097 (8th Cir. 2014) ("'Constructive possession is established by proof that the defendant had control over the place where the firearm was located, or control, ownership, or dominion of the firearm itself.'" (quoting *United States v. Brown*, 634 F.3d 435, 439 (8th Cir. 2011)). It is true that the Eighth Circuit Court of Appeals has also stated, "'[C]onstructive possession generally requires knowledge of an object, the ability to control it, and the intent to do so.'" *United States v. Chantharath*, 705 F.3d 295, 304 (8th Cir. 2013) (quoting *United States v. Pazour*, 609 F.3d 950, 952–53 (8th Cir. 2010). The "intent to control" requirement, however, is not

purportedly made the improper statement of the standard, Tran had already stipulated that she "possessed" the firearm in question "in furtherance of a drug trafficking crime." *See* Plea Agreement (Crim. docket no. 69-1), 6, ¶ 15(A). Because there is no limitation or explanation of the nature of Tran's possession of the firearm, it must necessarily be understood as an admission of actual possession.

---

necessarily "intent to exercise control over the *firearm*," as Tran contends, but may be "'intent and ability to exercise control over [the firearm] *or the place where it is kept.*'" *United States v. Kent*, 531 F.3d 642, 652 (8th Cir. 2008) (emphasis added) (quoting *United States v. Robertson*, 519 F.3d 452, 455 (8th Cir. 2008)). Also, even when "intent to control" is expressly identified as a requirement, it is not always explicitly considered in determining the sufficiency of the evidence of constructive possession. *See, e.g., Chantharath*, 705 F.3d at 304 (finding sufficient evidence of constructive possession of a firearm where the defendant was the registered tenant of the house and apartment where the firearms were discovered and he acknowledged possession of a firearm at the house when he sent another person to retrieve a bag that the defendant claimed contained firearms). Furthermore, the Eighth Circuit Court of Appeals has recognized that, where "constructive possession requires evidence that a defendant knowingly had the power and intention to exercise control over a firearm," "[s]uch possession may be established by showing the defendant had dominion over the premises where the firearm is kept." *United States v. Saddler*, 538 F.3d 879, 888 (8th Cir. 2008). Where it is proper to infer "intent to control" a firearm or the place where it is found from "knowledge" of the firearm and "dominion" (or "control") of the firearm or the place where the firearm is found, failure to state "intent to control" the firearm or the place where it is found as an express requirement of constructive possession is not error. Tran's assertion that the firearm charge here involved "joint occupancy" does not change this conclusion. *See United States v. Williams*, 512 F.3d 1040, 1044 (8th Cir. 2008) (holding that evidence was sufficient to show possession by both the defendant and his girlfriend, where "intent to exercise control over the firearm" was expressly identified as an element of "constructive possession," but the court held that the evidence of joint possession was "ample" where witnesses testified that the defendant and his girlfriend shared the residence and bedroom where the firearm was discovered, the girlfriend testified that she and the defendant held joint possession of the firearm, and numerous witnesses testified that they saw the defendant exercise control over the firearm).

There is no question "that *Strickland* applies to ineffective assistance claims arising out of the plea bargaining process." *See, e.g., Wanatee v. Ault*, 259 F.3d 700, 703 (8th Cir. 2001) (citing *Hill*, 474 U.S. at 58). Thus, to establish deficient performance of her federal trial counsel in this regard, Tran must prove that her federal trial counsel's conduct was not objectively reasonable. *Fausto*, 754 F.3d at 642. This she cannot do. The record shows beyond dispute that there were objectively reasonable grounds for advising Tran to enter into a "cooperation" plea agreement, rather than go to trial.

Contrary to Tran's contentions, Tran's co-defendant had *not* already decided to plead guilty when Tran finally entered into the "cooperation" plea agreement. As explained, above, by Order (Crim. docket no. 62), filed July 24, 2012, Judge Strand set a guilty plea hearing for Tran for August 15, 2012, and struck the trial scheduled for August 29, 2012, as to her. A week later, on August 1, 2012, Boykin's trial was reset to begin on August 27, 2012. *See* Order (Crim. docket no. 64). It was not until August 3, 2012, more than a week after Tran's guilty plea hearing was set, that Judge Strand filed an Order (Crim. docket no. 65) setting a guilty plea hearing for Boykin for August 16, 2012, and also struck the trial scheduled for him. Thus, at the time that Tran entered into the "cooperation" plea agreement, there was still a reasonable possibility that she could provide cooperation against Boykin. The "cooperation" plea agreement also was not limited to possible cooperation against Boykin. *See* Plea Agreement ("Cooperation") at 3-6 (¶¶ 8-14). As the prosecution argues, a "cooperation" plea agreement did provide an opportunity to be sentenced or to receive a reduction in sentence below the mandatory minimums for the offenses with which Tran was charged. *See* Sentencing Hearing Transcript at 3:5-10 (the court observed, "So reading between the lines, I assume that, [federal trial counsel], you had her sign the cooperation plea agreement thinking that she was going to cooperate and then the government would file a 3553(e) motion and that would waive a mandatory minimum, one or both mandatory minimums," and federal

trial counsel agreed).  Also, in light of the evidence in the record, a conclusion that Tran would be found guilty if she went to trial, and lose any potential benefits of a "cooperation" plea agreement, was not unreasonable.  While it is unfortunate that Boykin ultimately did plead guilty and that Tran did not provide sufficient cooperation to the prosecution, either against him or against others, to convince the prosecution to move for reductions of her sentence for substantial assistance, those after-the-fact circumstances do not render federal trial counsel's advice to enter into the "cooperation" plea agreement, instead of going to trial, unreasonable or prejudicial.

Tran is not entitled to an evidentiary hearing or § 2255 relief on this claim.

## C. *Certificate Of Appealability*

Denial of all of Tran's claims for § 2255 relief raises the question of whether or not she is entitled to a certificate of appealability on those claims.  In order to obtain a certificate of appealability on those claims, Tran must make a substantial showing of the denial of a constitutional right.  *See Miller–El v. Cockrell*, 537 U.S. 322 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076–77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873–74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).  "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings."  *Cox*, 133 F.3d at 569.  Moreover, the United States Supreme Court reiterated in *Miller–El v. Cockrell* that, "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"  537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  I conclude that Tran has

failed to make a substantial showing that any of her claims are debatable among reasonable jurists, that a court could resolve any of the issues raised in those claims differently, or that any question raised in those claims deserves further proceedings. Consequently, a certificate of appealability is denied as to all of Tran's claims. *See* 28 U.S.C. § 2253(c)(1)(B); *Miller-El*, 537 U.S. at 335-36; *Cox*, 133 F.3d at 569.

### III.   CONCLUSION

Upon the foregoing,

1.      Petitioner Jessica Tran's April 5, 2013, *pro se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Original § 2255 Motion) (Civ. docket no. 1), as amended, with the assistance of counsel, on November 19, 2013, Amended Motion For Relief Under 28 U.S.C. § 2255 (Amended § 2255 Motion) (Civ. docket no. 32), is **denied in its entirety**;

2.      Tran's Request For Evidentiary Hearing (Civ. docket no. 24) on her claims is **denied**;

3.      This matter is **dismissed in its entirety**; and

4.      No certificate of appealability will issue for any claim or contention in this case.

**IT IS SO ORDERED**.

**DATED** this 2nd day of March, 2015.

_Mark W. Bennett_
_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA